**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

              **Plaintiff,**

**v.**

              **18-CR-123W**

**ROBERT L. WILLIAMS, JR.,**

              **Defendant.**

_____

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

**PRELIMINARY STATEMENT**

The defendant, Robert L. Williams, Jr. ("the defendant"), is charged in an indictment with having violated Title 18 U.S.C. §§ 922(g)(1), *i.e.*, a felon in possession of a firearm and ammunition.  Dkt. # 4.  He has filed a motion seeking to suppress the use of evidence at trial seized from premises located at 116 Reed Street, Buffalo, New York on May 16, 2018 pursuant to a search warrant issued by this Court.  (18-M-79). He has also filed a motion wherein he seeks "suppression of out of court and in court identification as a result of unduly suggestive photo 'showups'."  Dkt. #22.[1]

---

[1] The defendant also filed a motion seeking "suppression of statements" of the defendant but has withdrawn that

The government has filed its opposition to both motions.   Dkt. #23.

Oral argument on the aforesaid motions was heard by this Court on January 21, 2020 and the matter was taken under advisement.

## DISCUSSION AND ANALYSIS

**A.  The Search Warrant for 116 Reed Street, Buffalo, New York**

The defendant argues that the search warrant authorizing the search of 116 Reed Street, Buffalo, New York was not based on legal probable cause because "the warrant application was based on information received from cooperating witnesses of unknown reliability."   Dkt. #22, p. 7, ¶ 14.   The defendant also asserts that the "search warrant application is devoid of any facts substantiating the cooperating witnesses' reliability, credibility, and basis of knowledge" and that "there are no facts corroborating the cooperating witnesses' self serving generic and unsupported allegations of criminal activity by the defendant."   Dkt. #22, p. 7, ¶ 15.   For the reasons that follow, these arguments of the defendant are totally rejected as being without merit.

---

motion.   Court minute entry January 21, 2020.

2

In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." (citation omitted). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (citation omitted.)
>
> In *Aguilar,* we required only that "the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was "credible" or his information "reliable." (citation omitted).
>
> As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.
>
> \*   \*   \*
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] "that probable cause existed. (citation

3

omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983).

As the Court of Appeals for the Second Circuit stated:

A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
*Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

4

In support of the application for the search warrant authorizing the search of 116 Reed Street, Buffalo, New York, the government submitted a twenty-two page affidavit of Special Agent Paul E. Brostko of the Bureau of Alcohol, Tobacco, Firearms and Explosives which outlined in specific detail the investigation that had been conducted leading up to the application for this search warrant.  (18-M-79, Dkt. #1).  Cooperating witnesses who had direct dealings with the defendant regarding the surrogate purchases of weapons for him were interviewed by law enforcement personnel and the substance of these interviews was set forth in the affidavit.  (*See* ¶s 12, 17, 19, 26, 32).  The affidavit also described in detail the surveillance photos of auto traffic from the Western District of New York to Ohio and back and the review of license records for these automobiles that traced back to the activities of the defendant and his surrogate purchases.  (*See* ¶s 23, 24, 34, 35, 36).  The affidavit also had attached to it as exhibits photos from a surveillance tape created and possessed by Cabela's, a retail gun seller located in Avon, Ohio, and described four individuals meeting in the store parking area near their automobiles, one of which was rented by Angela Roberts, the defendant's "baby momma."  Phots of two of the individuals inside the store looking at weapons were also attached.  The investigation also established that Victoria Orlando drove the defendant in her automobile to various "gun shows and FFL's in Ohio" during a "two week period in April 2018" and that she "purchased and delivered firearms to [the defendant's] residence, 116 Reed Street in Buffalo, N.Y." (*See* ¶s 19 and 32 of the affidavit).

5

Lastly, agents reviewed the records of gun sales which established that multiple purchases of weapons were made by the cooperating witnesses on behalf of the defendant.   (*See* ¶s 10, 11, 15, 18 and 25 of the affidavit).

The facts and circumstances described in Special Agent Brostko's affidavit (18-M-79) viewed in their totality were more than legally sufficient to establish probable cause that weapons were being purchased and stored illegally at the premises located at 116 Reed Street, Buffalo, New York by the defendant.

I find that the defendant has failed in his burden to invalidate the search warrant and that his argument that probable cause was lacking for issuance of that warrant is without legal merit.   Therefore, it is recommended that his motion to suppress the evidence seized pursuant to that warrant on this basis be DENIED.

### B.  The Photo Identification Issue

The defendant asserts that the showing of a "single photograph" of the defendant to "several cooperating witnesses during the interview process of those witnesses" was improper and a violation of "the Due Process Clause of the United States Constitution."   Dkt. #22, p. 9, ¶s 20-21.   As a result, he requests that "all out of court and tainted in-court identification [of the defendant] be suppressed."   Dkt. #22, p. 9, ¶ 23.

6

Both the United States Supreme Court and the Second Circuit Court of Appeals have established clearly defined guidelines to be used in resolving this type of issue, and because these decisions specifically state the methodology to be utilized, it is appropriate to set forth the language from those decisions in detail:

> It is the reliability of identification evidence that primarily determines its admissibility.

*Watkins v. Sowders*, 449 U.S. 341, 347 (1981).

> [T]he primary evil to be avoided is "a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. at 384."

*Neil v. Biggers*, 409 U.S. 188, 198 (1972).

> A defendant has a due process right not to be the object of suggestive police identification procedures that create "a very substantial likelihood of irreparable misidentification." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968) *cert. denied* ___ U.S. ___, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). The right to be free from suggestive identification procedures extends to photographic arrays.

*United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994).

> We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered are set out in *Biggers*, 409 U.S. at 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and

7

> the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Raheem v. Kelly*, 257 F.3d 122, 135 (2d Cir. 2001).

> The Court of Appeals for the Second Circuit has ruled that:
>
> When a witness has made a pretrial identification, the analysis of whether he is to be permitted to identify the defendant at trial normally requires a one-step or two-step inquiry. The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. . . .
>
> If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

> Normally the threshold question is whether the identification procedure was impermissibly suggestive. The procedure here combined characteristics of the photographic "spread" which may pass constitutional muster if properly done, and characteristics of the singly presented photograph which, absent exigent circumstances, amounts to an impermissibly suggestive photographic identification procedure. If the procedure is found to have been unnecessarily suggestive, the issue becomes whether the identification possesses sufficient aspects of reliability.
>
> While the indicia of suggestiveness appear to point in both directions in this case, we find it unnecessary to reach the question whether the procedure was impermissibly suggestive since [the witness] did not testify on the basis of the photographic identification themselves. In *Brathwaite v.*

8

> *Manson, supra*, 527 F.2d at 367 & n. 6, we reaffirmed our rule that an in-court identification is permissible if it stems "from the original observation of the defendant rather than the tainted identification." We therefore turn to an inquiry whether [the witness's] in-court identifications were supported by an independent basis in memory.

*Id.* at 197 (internal citations omitted).

Victoria Orlando was one of the cooperating witnesses to whom a single photograph of the defendant was shown on May 15, 2018 by Detective Michael Palinkas of the Ashtabula, Ohio Police Department. Ms. Orlando "confirmed the photo was the person she knew as 'Rob' that she had been purchasing and delivering firearms to 116 Reed Street, Buffalo, N.Y." Apparently Orlando also told Detective Palinkas that she had been "staying with [the defendant] for a week at 116 Reed Street, Buffalo, N.Y." (*See* affidavit of Special Agent Brostko, 18-M-79, p. 18, ¶ 32). It is pointed out that Victoria Orlando was interviewed on May 11, 2018 by Special Agent Gardner of the ATF about purchasing guns for the defendant whom she referred to as "Rob." She told Special Agent Gardner that she had spent a two-week period in April 2018 driving "Rob" around to gun shows and FLL's in Ohio and that she had spent a week with "Rob" at the premises located at 116 Reed Street, Buffalo, New York. Orlando described "Rob" to Special Agent Gardner as being "a black male, thirty-six (36) or thirty-seven (37) years old, tall, skinny, with green/bluish eyes" and further "explained that Rob got out of jail eight (8) months ago." (*See* affidavit of Special Agent Brostko, 18-M-79, p. 10, ¶ 19). This detailed, physical description of the defendant by Orlando, coupled with her two-week transportation of him in Ohio, coupled with her

9

week's stay with him at 116 Reed Street, Buffalo, New York clearly eliminates any doubts about the reliability of her identification of the defendant.  The showing of the defendant's photo to her four days later on May 15, 2018 was not "suggestive police identification" but rather was merely a means of corroborating the former identification made by Orlando to Special Agent Gardner on May 11, 2018.

On May 15, 2018, Special Agent Gardner also interviewed Shane Shumaker who admitted to her that he had purchased 16 firearms for the defendant whom he knew as "Ron" and described as a "black male."  He told Special Agent Gardner that he went with the defendant "to gun stores on three (3) different occasions" and that "Ron" would "provide the money and [he] would purchase the firearms" and that "Ron" paid him several hundred dollars for purchasing the firearms."  (*See* affidavit of Special Agent Brostko, 18-M-79, p. 13, ¶ 26).  When shown a photo of the defendant by Special Agent Gardner, Shumaker identified it as a photo of the person he knew as "Ron."  Special Agent Gardner determined that Shumaker purchased at least fourteen (14) firearms for the defendant on April 27 and 30, 2018.  (*See* affidavit of Special Agent Brostko, 18-M-79, pp. 11-12, ¶s 25-26).  Shumaker having spent time with the defendant on three different occasions going to gun shops and purchasing guns for the defendant on April 27 and 30, 2018, the showing of the photo of the defendant to Shumaker on May 15, 2018 certainly does not constitute "suggestive police identification" but merely corroboration of who Shumaker was working for.

As a result, I find that photo identifications made by Orlando and Shumaker of the defendant were not so tainted as to result in a finding that there was a "substantial likelihood of misidentification" that would require suppression of the evidence as advocated by the defendant. "The admission of evidence of a show up without more does not violate due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *Stovall v. Denno*, 388 U.S. 293, 302 (1967).

## CONCLUSION

Based on the foregoing, it is hereby recommended that defendant's motions to suppress evidence be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:   Buffalo, New York
         January 23, 2020

                                     *S/ H. Kenneth Schroeder, Jr.*
                                     **H. KENNETH SCHROEDER, JR.**
                                     **United States Magistrate Judge**