IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  18-CR-123-EAW

ROBERT WILLIAMS,

        Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and Joshua A. Violanti, Assistant United States Attorney, of counsel, hereby files its sentencing memorandum.

## PROCEDURAL HISTORY

On or about May 18, 2018, the defendant appeared on a Criminal Complaint before the Honorable H. Kenneth Schroeder Jr., United States Magistrate Judge. See Minute Entry on May 18, 2018. On June 14, 2018, the defendant was indicted by a federal Grand Jury on a one-count Indictment for a violation of Title 18, United States Code, Section 922(g)(1). See Dkt. 4. The defendant was arraigned on June 22, 2018. See Minute Entry on June 22, 2018. A Superseding Indictment was returned against the defendant on February 5, 2020. Dkt. 43. On or about February 21, 2020, the defendant pled guilty to five counts of the Superseding Indictment including violations of Title 18, United States Code, Sections 371, 922(a)(1)(A), 922(g)(1), and 924(c)(1)(A)(i), and Title 21, United States Code, Section 841(a)(1). Dkt. 50, 51.

**SENTENCING PROCEDURE**

The Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. <u>Booker</u>, 543 U.S. at 234, 236. Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide whether to impose a Guidelines or non-Guidelines sentence. <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005).

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, this Court must consider the following:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for –

      a.      the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

            i.      issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

            ii.      that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

      b.      in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5.      any pertinent policy statement –

      a.      issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      b.      that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6.      the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).

This range is "the starting point and the initial benchmark." Id. As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's 'starting point' in selecting a sentence. The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010). Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" Cavera, 550 F.3d at 189, quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that

4

would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate, this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S. Ct. at 596. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id. at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See Cavera, 550 F.3d at 190-91. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id., citing Rita, 127 S. Ct. at 2456. Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." Rita, 127 S. Ct. at 2468. Further, "a district court

imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one.'" Cavera, 550 F.3d at 193 (quoting Gall, 128 S. Ct. at 197 (ellipses added, brackets in original)).

In light of the background of the legal principles set forth above, the government submits that the Court should sentence the defendant to a midlevel Guidelines range sentence consistent with all of the government's filings, to afford adequate deterrence to the defendant's criminal conduct, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

**ARGUMENT**

A.  **The Factors Under § 3553(a) Support a Sentence Consistent with the Government Filings**

   1)  **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The circumstances of the charged offenses are serious. The defendant engaged in substantial firearms trafficking and drug crimes. The defendant is alleged to have been involved in a firearms trafficking conspiracy spanning the time of November 2017 to June 2018. According to the plea agreement, during the time of the conspiracy, the defendant was engaged in firearms trafficking, where he successfully used others to assist him in conducting straw purchases in the State of Ohio for the purpose of transporting the firearms into New York State. At times, these transactions involved drug-addicted straw purchasers to fill out paperwork and certify that they were the actual purchasers. The defendant and his

conspirators preyed on their vulnerabilities. The defendant used these addicts to allow firearms to be sold on "the street" which were virtually untraceable until they were used in a crime. Those straw purchases allowed the funneling of firearms into the Western District of New York. In fact, some of these firearms ended up at crime scenes in the city of Buffalo. The conspiracy allegedly involved numerous firearms. By illegally obtaining numerous firearms and allowing them to enter the Buffalo community and other communities, the defendant had no concern for the violence that the firearms could cause and showed utter disregard for the lives and safety of innocent people.

Notably, the defendant possessed the quantities of heroin and intended to distribute them to straw purchasers as partial payment for purchasing firearms on his behalf. The defendant utilized firearms as tools of in his drug trafficking. The defendant had prior felony convictions and was prohibited from possessing firearms and ammunition.

The history and characteristics of the defendant weigh towards a sentence of a midlevel Guidelines range consistent with all of the government's filings. The defendant's criminal history is extensive. Based on the government's review, the defendant has had at least five (5) felony convictions and has arrests for narcotics, firearms, robbery, and other violent offenses. Specifically, on March 25, 2004, the defendant pled guilty to Attempted Criminal Possession of a Controlled Substance (Class D Felony) in Erie County Court, Buffalo, New York, and sentenced to a term of imprisonment of 3 to 6 years. On June 8, 2012, the defendant pled guilty to Criminal Possession of a Weapon (Class C Felony) in Erie County

Court, Buffalo, New York, and was sentenced to a term of imprisonment of 5 years and post release supervision of 5 years.

On September 13, 2006, the defendant pled guilty to the Use of a Telephone to Facilitate a Drug Trafficking Crime, in violation of Title 21, United States Code, Section 843(b) in Western District Court of New York and sentenced to a term of imprisonment of 5 months concurrent to his New York State sentence imposed in Erie County Court, Buffalo, New York, on March 25, 2004. The defendant has at least ten (10) arrests while on bail or subject to some form of supervision and multiple revocations of supervision. In addition, the defendant's prior federal case occurred while he was subject to New York State Parole supervision.

As a result, the government requests a midlevel Guidelines range consistent with all of the government's filings.

**2)** **<u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>**

Under 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense. To achieve this end, the Court should consider the objective harm of the offense and the subjective culpability of the offender herself. In the instant case, the gravity of the defendant's conduct was serious and substantial. The defendant was responsible for the trafficking of numerous firearms which ended up in the hands of Titus Thompson and at various crime scenes. The defendant's role made the

operation efficient and effective. A midlevel Guidelines range consistent with the government's filings, addresses the seriousness of the offense under § 3553(a)(2)(A).

### 3) Deterrence

Under 18 U.S.C. § 3553(a)(2)(B), the Court should consider whether a sentence affords adequate deterrence. Unlike other sentencing considerations, the goal of deterrence is not to punish the crime at hand, but to achieve a practical end for the future—namely the prevention of crime. Deterrence can be both specific to the defendant or general to the public. As one court explained: "[s]pecific deterrence is meant to disincline individual offenders from repeating the same or other criminal acts. . . [while] [g]eneral deterrence attempts to discourage the public at large from engaging in similar conduct." United States v. Blarek, 7 F. Supp. 2d 192, 210 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (internal citations omitted).

Here, the considerations of general deterrence weigh towards a sentencing consistent with midlevel Guidelines range consistent with all of the government's filings. The crimes of the defendant are seriously detrimental to society. Firearms and drug trafficking should not and cannot not take place within the community. The stakes are severe and potentially, may lead to injury and the loss of life. The general deterrence effect of punishment would be reduced if individuals responsible for trafficking a large number of firearms as well as drugs were routinely sentenced too leniently.

4)	**The Need to Protect the Public from Further Crimes of the Defendant**

Under 18 U.S.C. § 3553(a)(2)(C), the Court should consider whether a sentence considers the need for incapacitation. "Incapacitation seeks to ensure that offenders are rendered physically incapable of committing crime." United States v. Blarek, 7 F. Supp. 2d 192, 209 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (quoting Arthur W. Campbell, Law of Sentencing § 2:3, at 27–28 (1991)). The considerations under § 3553(a) once again weigh in favor of a midlevel Guidelines range consistent with the government's filings.

## CONCLUSION

For the above reasons, the government respectfully requests that the Court impose a midlevel Guidelines range consistent with all of the government's filings.

DATED:   Buffalo, New York, February 5, 2024.

>	TRINI E. ROSS
>	United States Attorney
>
> BY:	s/JOSHUA A. VIOLANTI
>	Assistant United States Attorney
>	United States Attorney's Office
>	Western District of New York
>	138 Delaware Avenue
>	Buffalo, New York   14202
>	716/843-5864
>	Joshua.Violanti@usdoj.gov